FILED
2019 Feb-06  AM 11:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, NORTHEASTERN DIVISION

| | |
|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) ) ) |
| PLAINTIFF, | ) ) |
| vs. | ) CIVIL ACTION NO: ) |
| CARROLL AND CORUM BUILDING SUPPLY CO., INC. a/k/a and/or d/b/a and/or f/k/a CORUM BUILDING & FARM, INC.; SEC CONSTRUCTION, INC. JASON SELF; AUBREY CRYER AND NIKKI CRYER; | ) ) ) ) ) ) ) ) |
| DEFENDANTS. | ) ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Frankenmuth Mutual Insurance Company ("FMIC") and asserts the following Complaint for Declaratory Judgment:

### PARTIES

1.     FMIC is a corporation engaged in the business of insurance, is incorporated in, is domiciled in, and has its principal place of business in the State of Michigan.  Thus, FMIC is a citizen of the State of Michigan.  FMIC is licensed to conduct insurance business in the State of Alabama.

2.     Defendant Carroll and Corum Building Supply, Co., Inc. Carroll & Corum Building Supply Co., Inc. a/k/a and/or d/b/a and/or f/k/a Corum Building & Farm, Inc. ("C&C") is a corporation incorporated in the State of Alabama and has its principal place of business in the Morgan County, Alabama.   Thus, C&C is a citizen of the State of Alabama.

3.     SEC Construction, Inc. ("SEC") is a corporation formed, existing, and operating in Morgan County, Alabama.

4.     Jason Self ("Self") is an individual who is a resident citizen of Morgan County, Alabama.

5.     Aubrey Cryer and Nikki Cryer are individuals who are resident citizens of Morgan County, Alabama.

## JURISDICTION AND VENUE

6.     This court has diversity jurisdiction over the issues presented herein pursuant to 28 U.S.C. § 1332 because the citizenship of FMIC and the Defendants is diverse and the amount in controversy exceeds $75,000.00.

7.     Jurisdiction over this matter lies pursuant to 28 U.S.C. § 2201 which provides as follows:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought.

2

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2) which

provide as follows:

> (b)    Venue in general. – A civil action may be brought
>        in –
>
> ****
>
> (2)    a judicial district in which a substantial part
>        of the events or omissions giving rise to the
>        claim occurred ….
>
> ****
>
> (c)    Residency. – For all venue purposes –
>
> ****
>
> (2)    an entity with the capacity to sue or be sued
>        in its common name under applicable law,
>        whether or not incorporated, shall be
>        deemed to reside, if a defendant, in any
>        judicial district in which such defendant is
>        subject to the court's personal jurisdiction
>        with respect to the civil action in question
>        ….

## FACTUAL ALLEGATIONS

9.      FMIC originally issued a businessowners policy of insurance (no.

BOP 6200553) (the "Policy") insuring C&C with effective dates of October 1,

2012 to October 1, 2013, and the Policy renewed on an annual basis in following

years.  A copy of the Policy is attached as Exhibit 1.  FMIC issued the Policy to

C&C in the state of Alabama.

3

10.     The Policy includes forms for (among other things) businessowners liability insurance coverage ("Liability Coverage") and liability umbrella insurance coverage ("Umbrella Coverage"). [Exhibit 1 (Policy)]

11.     The limits of coverage available for a covered claim that is otherwise not excluded under the Liability Coverage and the Umbrella Coverage are, for each, (a) $2,000,000 general aggregate limit, (b) $1,000,000 each occurrence limit, and (c) $2,000,000 products-completed operations aggregate limit. [Exhibit 1 (Policy)]

12.     On or about May 18, 2016, Aubrey Cryer in his individual capacity filed a complaint in the Circuit Court of Morgan County, Alabama, styled Aubrey Cryer and Nikki Cryer v. SEC Construction, Inc., Jason Self, and Loverly Turney, CV-2016-900204 (the "Underlying Action"). [Exhibit 2 (Complaint in Underlying Action)]

13.     The complaint in the Underlying Action was later amended to add Nikki Cryer as a plaintiff and to allege that, on November 25, 2013, the Cryers had entered into a contract with SEC and Self for the construction of a "new home" for the price of $611,541 that met the requirements of the "International Building Code." [Exhibit 3 (Amended Complaint in Underlying Action), ¶¶ 1, 6, and 7]

14.     The amended complaint in the Underlying Action pleads that, before construction slowed and cost overruns began, Self (a) selected a crew to frame the

4

house, (b) subcontracted the installation of the brick veneer, and (c) supervised major structural work, the installation of the framing, the roofing, and the rough-in of the HVAC.  [Exhibit 3 (Amended Complaint in Underlying Action), ¶¶ 10 and 11]

15.     According to the amended complaint in the Underlying Action, the "new home" suffers from the following defects: (a) inadequately supported point loads in the framing, (b) sagging/deflected subflooring from overloading, (c) missing/misplaced support beams, (d) missing/misplaced support columns, (e) improper/inadequate installation of joist hangers, (f) lack of weep holes in brick veneer, (g) improper flashing at weep hole locations, (h) failure to maintain one-inch air drainage behind the brick veneer, (i) excessive mortar blocking the drainage cavity, (j) inadequately sloped brick sills, (k) improperly installed flashing between roof and brick veneer, (l) inadequately constructed head joints at a bay window, and (m) "[o]ther defects and substandard workmanship in the residence." [Exhibit 3 (Amended Complaint in Underlying Action), ¶ 13]

16.     The amended complaint in the Underlying Action alleges that SEC and Self were provided "ample opportunity to cure the defects[,]" but they "refused to return and cure any defects."  [Exhibit 3 (Amended Complaint in Underlying Action), ¶ 16]

5

17.     For all that appears in the amended complaint in the Underlying Action, it is not alleged that any materials supplied for or used in the construction of the home were defective.   [Exhibit 3 (Amended Complaint in Underlying Action)]

18.     Upon information and belief, C&C's role relative to the home at issue in the Underlying Action was to (a) provide estimation services for the pricing of items/products used in the construction of the home, (b) sell some of the items and products used in the construction of the home, and (c) provide design services for the first floor framing of the home.

19.     The amended complaint in the Underlying Action alleges claims of suppression, reckless misrepresentation, fraudulent misrepresentation, innocent misrepresentation, negligence, wantonness, breach of the implied warranty of habitability, beach of implied warranty, breach of the warranty of good workmanship, deceptive trade practices, and breach of contract against SEC and Self. [Exhibit 3 (Amended Complaint in Underlying Action)]

20.     The amended complaint in the Underlying Action seeks to recover compensatory damages against SEC and Self for (a) a loss of value to the residence, (b) a loss of "the value of [the] purchase," (c) past, present, and future costs for inspection, repair, and maintenance, and (d) mental anguish.  [Exhibit 3

(Amended Complaint in Underlying Action), ¶¶ 19, 30, 34, 38, 42, 45, 48, 52, 56, 59, and 62]

21.    The amended complaint in the Underlying Action also seeks to recover punitive damages against SEC and Self. [Exhibit 3 (Amended Complaint in Underlying Action), various ad damnum clauses]

22.    On June 22, 2018, SEC and Self filed a third-party complaint (the "Third-Party Suit") against C&C in the Underlying Action. [Exhibit 4 (Third-Party Complaint in Underlying Action)]

23.    The Third-Party Suit alleges that SEC and Self are defendants in the Underlying Action relative to claims arising from the alleged faulty construction of the home. [Exhibit 4 (Third-Party Complaint in Underlying Action), ¶ 7]

24.    According to the Third-Party Suit, (a) the claims against SEC and Self "include allegations of … errors, defects and/or misrepresentations regarding the materials sold, recommended and/or supplied for the construction of the … home by [C&C]" and (b) C&C "undertook the duty to sell, recommend and/or supply appropriate and proper materials for the construction of [the] home and/or expressly and/or impliedly warranted that said materials were appropriate and proper for use in the construction of [the] home. [Exhibit 4 (Third-Party Complaint in Underlying Action), ¶¶ 8 and 9]

25.     The Third-Party Suit pursues a claim for common law indemnity, alleging that (a) C&C is "responsible for the claims asserted by and the damages allegedly sustained by [the plaintiffs in the Underlying Action]" and (b) SEC and Self "are entitled to be indemnified pursuant to principles of common law and/or equitable subrogation." [Exhibit 4 (Third-Party Complaint in Underlying Action), ¶ 11]

26.     This count seeks to recover "all damages, court costs, attorney's fees, and/or judgments[, and] … such other damages [and] equitable and just relief to which [SEC] and Jason Self are entitled." [Exhibit 4 (Third-Party Complaint in Underlying Action), p. 7]

27.     The Third-Party Suit also pursues a claim for breach of contract and/or warranty, alleging that if SEC and Self "are found to be liable … for any damages asserted in [the Underlying Action …] then in that event, [C&C is] liable to [SEC] and Jason Self for breach of oral and/or written contracts and/or agreements, and/or breach of express and/or implied warranties." [Exhibit 4 (Third-Party Complaint in Underlying Action), ¶ 13]

28.     This count seeks to recover "all damages, court costs, attorney's fees, and/or judgments that [SEC] and Jason Self may incur or that may be assessed in this lawsuit." [Exhibit 4 (Third-Party Complaint in Underlying Action), p. 8]

29.     C&C has presented a claim under the Policy to FMIC for a defense and an indemnification of the Third-Party Suit.

30.     FMIC is providing a defense to C&C under a reservation of rights.

31.     The Policy's provisions regarding the Liability Coverage state, in pertinent part, as follows:

**SECTION II – LIABILITY**

A.     **Coverages**

    1.     **Business Liability**

        a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.   However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which the insurance does not apply.   We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

            (1)     The amount we will pay for damages is limited as described in Paragraph D. – Limits Of Insurance in Section II – Liability; and

            (2)     Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph F. Coverage Extension – Supplementary Payments.

b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

****

[Exhibit 1 (Policy), Businessowners Coverage Form p. 33 of 53]

32.    The coverage afforded by the Liability Coverage is subject to various exclusions including (but not limited to) the following:

**B.    Exclusions**

**1.    Applicable to Business Liability Coverage**

This insurance does not apply to:

****

j.    **Professional Services**

"Bodily injury" or "property damage", or "personal and advertising injury) caused by the rendering or failure to render any professional service.  This includes but is not limited to:

****

(2)     Preparing, approving, or failing to prepare or
        approve maps, drawings, opinions, reports,
        surveys, change orders, designs or specifications;

****

l.      **Damage To Your Product**

"Property damage" to "your product" arising out of it or
any part of it.

m.      **Damage To Your Work**

"Property damage" to "your work" arising out of it or
any part of it and included in the "products-completed
operations hazard."

This exclusion does not apply if the damaged work or the
work out of which the damage arises was performed on
your behalf by a subcontractor.

n.      **Damage To Impaired Property Or Property Not
        Physically Injured**

"Property damage" to "impaired property" or property
that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous
        condition in "your product" or "your work;" or

(2)     A delay or failure by you or anyone acting on your
        behalf to perform a contract or agreement in
        accordance with its terms.

This exclusion does not apply to the loss of use of other
property arising out of sudden and accidental physical
injury to "your product" or "your work" after it has been
put to its intended use.

[Exhibit 1 (Policy), Businessowners Coverage Form pp. 35 and 39-40 of 53]

33.    The Policy defines various terms used in the Liability Coverage, and these terms include (but are not limited to) the following:

**F.     Liability And Medical Expenses Definitions**

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*\*

8.    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by

(1)    The repair, replacement, adjustment or removal of "your product" or "your work"; or

(2)    Your fulfilling the terms of the contract or agreement.

\*\*\*\*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*\*

16.    "Products-completed operations hazard:"

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.   However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

        The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

    b.    Does not include "bodily injury" or "property damage" arising out of:

       (1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

       (2)     The existence of tools, uninstalled equipment or abandoned or unused materials.

17.    "Property damage" means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*\*

21.    "Your product:"

    a.     Means:

       (1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

          (a)     You;

          (b)     Others trading under your name; or

          (c)     A person or organization whose business or assets you have acquired; and

       (2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

14

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

        (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

22.    "Your work:"

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

        (2)    The providing of or failure to provide warnings or instructions.

[Exhibit 1 (Policy), Businessowners Coverage Form, pp. 46, 47, 48, 49, 50 of 53]

34.    The Umbrella Coverage provides coverage in addition to the Liability Coverage.  [Exhibit (Policy), Commercial Liability Umbrella Coverage Form, pp. 1-19 of 19]

15

35.     The Umbrella Coverage's insuring agreement states, in pertinent part,

as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

    a.     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.  But:

        (1)     The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

        (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.        This insurance applies to "bodily injury" and "property damage" only if:

            (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2)      The "bodily injury" or "property damage" occurs during the policy period; ….

[Exhibit 1 (Policy), Commercial Liability Umbrella Coverage Form, p. 1 of 19]

36.    The Umbrella Coverage is subject to various exclusions including (but not limited to) the following:

**2.**    **Exclusions**

This insurance does not apply to:

****

    n.      **Damage To Your Product**

          "Property damage" to "your product" arising out of it or any part of it.

    o.      **Damage To Your Work**

          "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

          This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

    p.      **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\*\*\*\*

s.    **Professional Services**

"Bodily injury" or "property damage", or "personal and advertising injury) caused by the rendering or failure to render any professional service.  This includes but is not limited to:

\*\*\*\*

(2)    Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by an architect, engineer or surveyor performing services on a project on which you serve as construction manager;

\*\*\*\*

[Exhibit 1 (Policy), Commercial Liability Umbrella Coverage Form, pp. 2 and 5 of 19]

37.    The Policy defines various terms used in the Umbrella Coverage, and these terms include (but are not limited to) the following:

18

## SECTION V – DEFINITIONS

3.  "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

****

8.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

****

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

****

17. "Products-completed operations hazard":

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)  Products that are still in your physical possession; or

        (2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

19

    (a)    When all of the work called for in your contract has been completed.

    (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.    Does not include "bodily injury" or "property damage" arising out of:

    (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    (2)    The existence of tools, uninstalled equipment or abandoned or unused materials.

18.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

****

20

19.   "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20.   "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

****

24.   "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

****

27.   "Your product":

a.   Means:

(1)   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)   You;

(b)   Others trading under your name; or

(c)   A person or organization whose business or assets you have acquired; and

(2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.   Includes:

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

      (2)    The providing of or failure to provide warnings or instructions.

   c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

28.    "Your work":

   a.    Means:

      (1)    Work or operations performed by you or on your behalf; and

      (2)    Materials, parts or equipment furnished in connection with such work or operations.

   b.    Includes:

      (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

      (2)    The providing of or failure to provide warnings or instructions.

[Exhibit 1 (Policy), Commercial Liability Umbrella Coverage Form, pp. 16, 17, 18, and 19 of 19]

## COUNT I

38.    Neither SEC's and Self's claim for common law indemnification in the Third-Party Suit against C&C nor their claims for breach of contract/warranties in the Third-Party Suit against C&C (a) involve "bodily injury" or "property

damage" as defined in the Liability Coverage or (b) constitute an "occurrence" during the coverage period under the Liability Coverage or the Umbrella Coverage.

39.    If SEC's and Self's claims in the Third-Party Suit for common law indemnification and breach of contract/warranties involve "bodily injury" or "property damage" caused by an "occurrence," coverage for said claims is excluded under the Liability Coverage's and the Umbrella Coverage's "your product," "your work," "impaired property," "professional services," and other exclusions.

40.    There is a dispute between FMIC and C&C as to whether there is a duty on the part of FMIC under the Policy to defend C&C in the Third-Party Suit and to indemnify C&C for any judgment that might be rendered against it in the Third-Party Suit.

41.    This dispute affects any eventual claim, pursuant to Alabama Code § 27-3-2 (1975), that the Cryers' might have to proceeds potentially available under the Policy.

42.    This dispute regarding coverage under the Policy is a justiciable controversy which should be resolved by this Court.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, FMIC respectfully requests

the following relief:

- that this Honorable Court will take jurisdiction over this cause,

- that this Honorable Court will declare what duties, if any, FMIC owes
  under the Policy to defend C&C or to indemnify or pay any judgment
  that may be rendered against C&C as a result of the allegations in the
  Third-Party Suit; and

- that this Honorable Court will render such other appropriate and
  necessary relief to which FMIC may be entitled.


Respectfully Submitted,

Kori L. Clement (CLEMK5125)
Attorney for Plaintiff
Frankenmuth Mutual Insurance Company



OF COUNSEL:
HARE & CLEMENT, P.C.
100 Chase Park South
Suite 200
Hoover, Alabama  35244
Telephone:  (205) 322-3040
Facsimile:  (205) 403-4975
Email:  clem@harelaw.com

**PLEASE SERVE DEFENDANTS**
**BY CERTIFIED MAIL RETURN**
**RECEIPT REQUESTED**

Carroll & Corum Building Supply Co., Inc. a/k/a and/or d/b/a
and/or f/k/a Corum Building & Farm, Inc.
408 Highway 31 NW
Hartselle, Alabama 35640

SEC Construction, Inc.
Jason Self, Registered Agent
2307 Highway 31 SW
Hartselle, Alabama 35640

Jason Self
2307 Highway 31 SW
Hartselle, Alabama 35640

Aubrey Cryer
222 North Robinson Road
Hartselle, Alabama 35640

Nikki Cryer
222 North Robinson Road
Hartselle, Alabama 35640